IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL REVELES,

                                              OPINION AND ORDER

                Plaintiff,

                                           22-cv-90-bbc

       v.

K.A. CARR, WARDEN TEGELS, DEPUTY
WARDEN BUESGEN, CUS DERUS,
FPS PETERSON, JOHN DOES CANTEEN,
LT. HAGBERG, C.O. VAN KIRK,
HSU SUPERVISOR TAMMY MAASSEN,
R.N. ANTHONY HENTZ,
R.N. ROBERT SOUSEK, LILY LIU M.D.,
RN K.L. PRALLE, RN S.M. ENDER,
RN DENISE HURLESS,
J.D. NELSON M.D.,
WESTERN WISCONSIN UROLOGY EAU CLAIRE,
SGT. ROMBOWSKI, LT. GUIVERA,
INVESTIGATOR SPECKHEART,
C.O. KRIEGER, C.O. VAN KIRK,
DR. MARTIN, RN REBEKKA,
C.O. PLESHLESNEU,
and multiple DOES,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Michael Reveles, appearing pro se, is a prisoner at Jackson Correctional

Institution.  Plaintiff has filed a lawsuit under 42 U.S.C. § 1983, in which he brings multiple

sets of claims, against different sets of prison officials and offsite treatment providers, that

he says are all related to medical problems he had following prostate surgery.  Plaintiff has

made an initial partial payment of the filing fee as previously directed by the court.  He has

submitted a complaint, dkt. # 1, and two  declarations, dkts. ## 8, 9, which I will consider

as the operative pleading.  I also have considered documents that plaintiff submitted and

1

referred to in his complaint, including his medical records.  Fed. R. Civ. P. 10(c); <u>Williamson v. Curran</u>, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted).  Plaintiff also has filed a motion for court assistance in recruiting counsel.  Dkt. #3.

The next step is to screen plaintiff's complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A.  In doing so, I must accept plaintiff's allegations as true, <u>Bonte v. U.S Bank, N.A.</u>, 624 F.3d 461, 463 (7th Cir. 2010), and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers, <u>Arnett v. Webster</u>, 658 F.3d 742, 751 (7th Cir. 2011).

As explained below, I am dismissing Reveles' complaint in its entirety.  Even if his detailed allegations are taken at face value, they fail to allege that any of the defendants violated any of his constitutional rights.  To the contrary, his own admissions establish that defendants were not deliberately indifferent to his medical needs, did not retaliate against him and did not otherwise violate his constitutional rights.  Even a pro se plaintiff can plead himself out of court if he pleads facts that prevent him from obtaining relief.  <u>Edwards v. Snyder</u>, 478 F.3d 827, 830 (7th Cir. 2007); <u>McCready v. Ebay, Inc.</u>, 453 F.3d 882, 888 (7th Cir. 2006).  Reveles has done that here.

Plaintiff alleges the following facts in his complaint.

ALLEGATIONS OF FACT

Plaintiff Michael Reveles is incarcerated at the Jackson Correctional Institution, where most of the events took place.  Most of the defendants are correctional officers, nurses and other staff employed at the institution.  However, plaintiff has also named as defendants various doctors and medical staff who provided medical care to him at facilities outside the institution.

A.  Medical Care

On February 15, 2019, plaintiff had prostate surgery at Sacred Heart Memorial Hospital in Eau Claire, Wisconsin.  Plaintiff was transported to the hospital by a team of four correctional officers from the institution.  Cpt., dkt. #1, p.2; Decl., dkt. #8, p.2.  Dr. J.D. Nelson, who is affiliated with Western Wisconsin Urology, performed the surgery and issued discharge instructions afterwards.  Among other things, Dr. Nelson recommended that traction on plaintiff's Foley catheter be discontinued at 7 p.m., and that he remain catheterized until the following morning.  Cpt., dkt. #1, exh. #3, p.1.

After his surgery, plaintiff was moved to the post-operative recovery area.  Decl., dkt. #8, p.2.  One of the correctional officers on the transportation team, defendant van Kirk, asked a nurse named Rebekka if plaintiff could be transported back to the institution.  Rebekka replied that plaintiff was to remain at the hospital until 7 p.m.  Id.  Later, after Rebekka's shift ended, defendant van Kirk asked the newly-assigned nurse if plaintiff could be discharged early to the institution, explaining that there were nurses there who could

3

handle his care.  Id.  Although plaintiff begged this nurse not to permit his early release, she did so, allowing the officers to transport plaintiff before 7 p.m.  Id.

During the van ride back, plaintiff noticed that his catheter was clogged.  He reported this to the correctional staff in the van, but they continued on to the institution.  There, he was seen by a nurse, defendant Robert Sousek, at approximately 8:21 p.m. 2/15/19 Nursing Narrative Note, dkt. #1-4, p.3.  Plaintiff complained of discomfort and told Sousek his catheter was blocked.  Id.  Sousek flushed the catheter with water, which removed a clot. Id.  (According to plaintiff's discharge notes, blood in the urine is not unexpected after the type of surgery he had.  Dkt. #1-3.)  About an hour and a half later, plaintiff returned to the health services unit, stating he felt nauseous and faint and his catheter was clogged again. 2/15/19 Nursing Narrative Note, dkt. #1-4, p. 1.  Sousek attempted to clear the blockage by flushing the catheter with water, without success.  Id.  According to plaintiff, Sousek then squeezed plaintiff's penis in an attempt to clear the blood clot, which was blocking the catheter, causing plaintiff pain. Cpt., dkt. #1, at 4.  (Sousek's nursing note states that he "[d]eflated balloon of 25 ccl fluid, inserted catheter further into bladder, and it started flowing again." 2/15/19 Nursing Narrative Note, dkt. #1-4, p. 1.)  Plaintiff called out for help from defendant Lt. Guivera and other correctional officers standing outside the room, but they ignored him.  Cpt., dkt. #1, at 4; Decl., dkt. #8, at 4.  Sousek was able to get plaintiff's catheter flowing again.

While plaintiff was using the restroom, he heard Sousek discussing plaintiff's medical condition with the correctional officers who had gathered in the hallway by the medical

treatment room.  Decl., dkt. #8, at 4.  While being transported back to his housing unit by correctional officer Pleshlesneu, plaintiff told Pleshlesneu that he was going to file a complaint against Sousek for assaulting him and violating his rights under HIPPA (the Health Insurance Portability and Accountability Act).  Pleshlesneu made a comment to the effect of, "Oh that's baby."  Id.  Plaintiff was not sure whether Pleshlesneu was referring to a nickname for Sousek or expressing an opinion about plaintiff's intended complaint.  Id.

Later that evening, at about 11 p.m., prison staff transported plaintiff to Black River Memorial Hospital's emergency department after he complained of abdominal pain and reported his catheter bag was still not filling.  Decl., dkt. #8, at p.3.  The attending physician, Dr. Carol Martin, noted that plaintiff had been "discharged early from Eau Claire so that he could return with the other inmates."  Id.  Emergency room staff irrigated his Foley catheter and gave him a belladonna and opium suppository (a medication used to treat moderate to severe pain caused by bladder spasms).  Id. at 5.  The suppository relieved plaintiff's pain and his catheter bag began to fill.  Id.  Plaintiff was released back to the institution with a prescription for a limited supply of Vicodin and another belladonna suppository, to be administered by the institution's health services unit.  Id.; dkt. #9-3.  This was ordered by Dr. Martin.

On February 16, 2019, plaintiff reported to the health services unit, where he was seen by a nurse, Sandra Ender.  Ender gave plaintiff the suppository and removed his catheter.  Id., p.4.

About two weeks later, on the evening of March 1, 2019, plaintiff noticed a lot of

blood in his toilet bowl.  Id.  He showed this to Sgt. Rombowski, who had plaintiff speak with the on-call nurse, Anthony Hentz.  Hentz told plaintiff to collect a stool sample and said he would be seen in the health services unit in the morning.  Plaintiff pleaded with Hentz to "take action" that night, but Hentz refused.  Decl., dkt. #8, at 6.

The next morning, on March 2, 2019, plaintiff was seen in the health services unit by nurse Kristine Pralle.  Decl., dkt. #9, p. 5.  After examining plaintiff's stool sample, Pralle directed staff to transport plaintiff to the Black River Memorial Hospital Emergency Department, where plaintiff was examined and treated for a suspected gastrointestinal bleed.  Dkt. # 9-3, at 26.  While there, plaintiff almost passed out after having a bowel movement.  Id.  He was transferred to the gastroenterology department at Gunderson Lutheran Medical Center, where he was admitted.  According to plaintiff's medical records, a colonoscopy showed diverticulosis but no definitive source of bleeding.  The blood in plaintiff's stool gradually resolved and he was discharged on March 5, 2019.  Decl., dkt. #9, exh. 3, p.31.

According to plaintiff, he lost four pints of blood and was given a transfusion.  Decl., dkt. #9, p.6.

## B.  PREA Complaint and Investigation

On February 17, 2019, plaintiff filed a Prison Rape Elimination Act (PREA) complaint against Sousek for his actions in clearing the catheter.  Defendant Speckheart investigated the complaint and spoke with Maassen, the health services unit manager, who told him that Sousek's action was appropriate.  Speckheart "took Maasen's word" and

dismissed plaintiff's complaint.  Decl., dkt. #8, at 8.

## C.  Retaliation

Sometime after filing his PREA complaint about Sousek, plaintiff was fired from his job in the canteen, decl., dkt. #8, at 7, by defendant Peterson, the canteen's financial manager.  Id.  Plaintiff worked in the canteen "under the observation" of canteen security officer van Kirk, who was married to the correctional officer of the same last name on the transportation team who removed him from the hospital early.

## OPINION

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)).  I understand plaintiff to be alleging claims for violations of his Eighth Amendment right to be free from cruel and unusual punishment, his First Amendment right to file grievances, and state law medical malpractice.

## A.  Eighth Amendment Deliberate Indifference

Plaintiff claims that prison officials acted with deliberate indifference to his serious

medical needs, which in turn "caused the Hematochezia that led to the overdose of medication," which in turn led to plaintiff "experiencing sever[e] blood loss that nearly led to his death." Cpt., dkt. # 1, at 6. Although plaintiff focuses primarily on the team of correctional officers who transported him from Sacred Heart Hospital back to the institution after his prostate surgery, I understand him to also be seeking relief from nearly every medical professional or prison staff who had anything to do with his health care between the time of his surgery on February 15, 2019 until his discharge from Gunderson Lutheran on March 5, 2019.

Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Chatham v. Davis, 839 F.3d 679, 684 (7th Cir. 2016). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Williams v. Liefer, 491 F.3d 710, 714 (7th Cir. 2007). A medical need is serious if it is life-threatening, carries a risk of permanent serious impairment if left untreated, results in needless pain and suffering, or significantly affects an individual's daily activities. Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, plaintiff's post-surgery catheterization, abdominal pain, and bloody stools constituted a serious medical need.

To be liable under the Eighth Amendment, an official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir. 1996). Inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).

In addition, plaintiff must show how each of the defendants was personally involved in depriving plaintiff of necessary treatment or delaying such treatment. Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012). An individual cannot be held liable in a § 1983 action unless he or she caused or participated in an alleged unconstitutional deprivation of rights. Pepper v. Village of Oak Park, 430 F.3d 805, 810 (7th Cir. 2005).

1. Correctional officer van Kirk, four transportation team Doe defendants, and Lt. Hagberg

Plaintiff asserts that van Kirk and the other members of the transportation team were deliberately indifferent to his post-surgery medical needs when they left Sacred Heart hospital "against the doctor's orders." Cpt., dkt. #1, at 2. However, plaintiff's own submissions refute this claim. Notably, plaintiff has submitted a sworn declaration asserting that van Kirk and the others were given permission to take plaintiff back to the institution by one of the attending nurses. (In a handwritten summary attached to the complaint, plaintiff acknowledges that the doctor, presumably Dr. Nelson, changed the discharge order. Dkt. #1-5, at 1.) Plaintiff does not allege that van Kirk or the other members of the transportation team were medical professionals. Accordingly, as non-medical professionals, they were justified in relying on the decision by hospital medical staff to allow plaintiff's return to the institution. Leiser v. Kloth, 9333 F.3d 696, 705 (7th Cir. 2019) (not

unreasonable for non-medical prison staff to assume that a treating physician will order what it medically necessary for an inmate); Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) (recognizing non-medical prison staff "will generally be justified in believing that the prisoner is in capable hands" when relying on expertise of medical personnel); Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) ("As a practical matter, it would be unwise to require more of a nonmedical staff member" than reliance on prison medical staff, as "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments").

This is true even if the officers may have "shopped around" for a nurse who would agree to discharge plaintiff early, as he alleges.  Although a non-medical official may be liable for knowingly disregarding an excessive risk to an inmate's safety if he interferes with the inmate's medical treatment, Giles v. Godniez, 914 F.3d 1040, 1050-51 (7th Cir. 2019) (discussing whether "non-medical defendants knew of and disregarded an excessive risk to [the plaintiff's] health and safety"), asking a nurse whether plaintiff could be returned to the institution does not rise to the level of "interfering" with plaintiff's medical treatment or of deliberate indifference to his medical needs.  Once again, the officers were entitled to assume that, if it was overly risky to transport plaintiff back to the institution earlier than planned, plaintiff's doctor would have refused to allow it.  Their mere asking did not amount to cruel and unusual punishment.  Burks v. Raemisch, 555 F.3d 591, 595 (7th Cir. 2009) (explaining that deliberate indifference would exist where non-medical staff "prevent[ed] the medical unit from delivering needed care").

Finally, although plaintiff names the Transportation Supervisor, Lt. Hagberg, as a

defendant, he does not explain how this defendant was involved.  To be liable under § 1983, a government official must be personally involved in the constitutional violation.  Gill v. City of Milwaukee, 850 F.3d 335, 344 (7th Cir 2017).  Plaintiff appears to have named Hagberg as a defendant solely in his capacity as the supervisor of the transportation team.  However, a supervisor cannot be held liable under § 1983 for the actions of his subordinates unless the supervisor "approve[s ] of the conduct and the basis for it."  Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001).  The complaint contains no allegations of this sort.  In any case, because plaintiff admits that the transporting officers had permission from hospital medical staff to take him back to the institution, he cannot establish an underlying constitutional violation in the first place.  Accordingly, plaintiff fails to state an Eighth Amendment claim against Lt. Hagberg, correctional officer van Kirk, or any other member of the transportation team.


2.  Health Services Unit Supervisor Tammy Maassen, R.N. Anthony Hentz, Lily Liu M.D., RN K.L. Pralle, RN S.M. Ender, RN Denise Hurless and Sgt. Rhambowski

Plaintiff has named as defendants the health services unit supervisor and all the members of the health services staff who interacted with plaintiff after his prostate surgery in mid-February 2019 and with respect to his bloody stools in early March 2019.  Medical providers may violate an inmate's Eighth Amendment rights if they prescribe a course of treatment without exercising medical judgment or if they do so knowing that the treatment will be ineffective.  Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662-63 (7th Cir. 2016).  In cases like this one, in which a prisoner alleges that he received some

treatment (on-site after care, transport to off-site medical facilities, and medication) for his medical condition, but the treatment was inadequate, the relevant question is whether defendants' actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996). In such cases, courts must defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014). A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." Id.

I understand plaintiff to be complaining about prison medical staff's response to two separate medical issues: first, his blocked catheter and pain after his prostate surgery, and second, his bloody stools he had about two weeks later. However, apart from his claim that Sousek sexually assaulted him, which I will address separately, it is not clear from the complaint what plaintiff contends these defendants did or did not do that amounted to deliberate indifference towards his serious medical needs. What is more, plaintiff's own summary, as well as the medical records attached to his complaint, show that plaintiff has no viable Eighth Amendment claim against any of these defendants.

First, with respect to his post-surgery care, his own admissions show that shortly after he arrived at the institution after his surgery, he was seen in the health services unit by defendants Sousek and Hurless. Sousek cleared his catheter and Hurless administered the

medications as specified in plaintiff's discharge order from Dr. Nelson.   When plaintiff continued to have pain and noticed his catheter bag not filling later that evening, he was taken to the hospital.   Plaintiff does not allege that any of the health services unit staff failed to take his concerns seriously or delayed unreasonably in getting him treatment; to the contrary, his own admissions make clear that health services unit staff attended to his medical needs and took reasonable steps to address them.

I note that plaintiff has attached a copy of an inmate complaint he filed on February 26, 2019, in which he alleged that he did not receive pain medication on the evening of February 16, 2019, the day after his surgery.   Dkt.#1-9, p.3.   According to his Medication Administration Record, nurse Sandra Ender gave him Tylenol with codeine at 12:15 p.m. on February 16, 2019.   Dkt. #1-7, at 1.   In any case, an occasional missed dose of medicine, without more, does not violate the Eighth Amendment, so plaintiff would not be allowed to proceed on this claim even if he meant to assert it.   West v. Millen, 79 F. App'x 190, 194 (7th Cir. 2003) (citing Zentmyer v. Kendall County, 220 F.3d 805, 811-12 (7th Cir. 2000)).

Plaintiff also appears to be claiming that Nurse Ender was deliberately indifferent to his medical needs when she gave him the second dose of belladonna opium the day after his emergency room visit for bladder spasms.   (Plaintiff attributes his GI bleeding two weeks later to this second suppository.)   However, as plaintiff admits, Nurse Ender was following "Dr. Martin's orders."   Dkt. #9, at 4.   That is exactly what a nurse is supposed to do. Accordingly, Enders' administration of the suppository did not violate plaintiff's Eighth Amendment rights.

As for his bloody stools two weeks later, plaintiff asserts that he showed a correctional

officer (defendant Rhabmowski) the toilet full of blood; in response, Rhambowski had plaintiff speak with the on-call nurse, defendant Anthony Hentz.  Hentz had plaintiff collect a stool sample and told him he would be seen by a nurse in the morning.  The next morning, plaintiff was seen by defendant Nurse Kristine Pralle, who had plaintiff collect another stool sample; after doing so, she had staff take plaintiff to the emergency room for further evaluation.  Plaintiff does not allege in his complaint how any of these individuals was deliberately indifferent to his condition.  In fact, his submissions affirmatively show that they were not.  Mere disagreement with the course of treatment does not support a claim for deliberate indifference.  Proctor v. Sood, 863 F.3d 563, 568 (7th Cir. 2017); Pyles, 771 F.3d at 409.  Plaintiff's allegations do not plausibly suggest that Hentz or Pralle failed to exercise medical judgment or that their choice of treatment was clearly ineffective or problematic.  Additionally, plaintiff concedes that Rhambowski responded to plaintiff's saying he had bloody stools by having him speak with the on-call nurse.  As a non-medical staff member, Rhambowski was entitled to defer to medical staff regarding the proper course of treatment. Leiser, 933 F.3d at 705.

Finally, plaintiff has named health services unit supervisor Tammy Maassen and Lily Liu M.D.  However, plaintiff's complaint contains no allegations about either of these defendants.  It appears that plaintiff named these defendants in their supervisory capacity over the other members of the health services staff.  However, a supervisor is liable under § 1983 only if she was personally involved in the constitutional violation.  Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021).  Nothing in plaintiff's various submissions suggests that either Maasen or Liu was personally involved in plaintiff's health care.  Accordingly, plaintiff

14

cannot proceed against them.

3. Robert Sousek, RN, Lt. Guivera, and John Doe CO's

The Eighth Amendment's prohibition on cruel and unusual punishment bars unnecessary and wanton infliction of pain on inmates. Hope v. Pelzer, 536 U.S. 730, 737 (2002); Whitman v. Nesic, 368 F.3d 931, 934 (7th Cir. 2004). Prison staff can violate this prohibition by maliciously inflicting pain or injury, Guitron v. Paul, 675 F.3d 1044, 1046 (7th Cir. 2012), or by performing some action that is "intended to humiliate the victim or gratify the assailant's sexual desires." Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012); Gillis v. Pollard, 554 Fed. App'x 502, 505 (7th Cir. 2014). Here, plaintiff claims that Sousek, "when attempting to clear [plaintiff's] catheter, began squeezing his penis and pinched the glands of his penis." Cpt., dkt. #1, p. 4; see also Exh. #3 5, at 2 ("[Sousek] began working to clear the clot . . .this is a very painful procedure as he tried to pump & squash the clot that was in my penis.") Plaintiff says that he responded by "yelling for help to make RN Sousek stop," but his calls for help were ignored by Lt. Guivera and the security officers who were just outside the room. Decl., dkt. #8, at 4.

Plaintiff's allegations are insufficient to permit an inference that Sousek acted with an intent to humiliate plaintiff, to inflict pain or injury, or to gratify his own sexual desires. To the contrary, as plaintiff concedes, Sousek squeezed plaintiff's penis in the context of a legitimate medical procedure, namely, attempting to clear a clot from plaintiff's catheter, which was blocked. Although plaintiff asserts that the touching was painful and that he cried out, he does not allege that Sousek squeezed his penis with more force than was

necessary or for an unnecessarily long time.  Further, plaintiff does not allege that Sousek said anything inappropriate or otherwise behaved in any way to suggest that the touching was for his own sexual gratification.

The lack of such allegations distinguishes plaintiff's complaint from those in which plaintiffs have been permitted to proceed on sexual assault claims under the Eighth Amendment.  For example, in Hively, 695 F.3d at 643, a prisoner's allegations were sufficient to state a claim because the prisoner alleged that a guard had spent "five to seven seconds gratuitously fondling the plaintiff's testicles and penis through the plaintiff's clothes and then, while strip searching him, fondling his nude testicles for two or three seconds . . . again without any justification."  Similarly, in Rivera v. Drake, 497 Fed. App'x 635, 637-38 (7th Cir. 2012), a prisoner's allegations were sufficient because he alleged that a guard inserted his finger into the prisoner's anus during a standard strip search, causing him humiliation and substantial pain, and without any legitimate justification.  Finally, in Sloan v. Bohlmann, 2011 WL 830544, *3 (E.D. Wis. 2011), the plaintiff was permitted to proceed based on allegations that a doctor had moved his finger in and out of the plaintiff's rectum multiple times, during an exam, while asking questions like "how does that feel?" and "does that make you feel like you are going to ejaculate?"  In this instance, plaintiff's own submissions establish that Sousek had legitimate medical reasons to squeeze plaintiff's penis, and they do not permit an inference that he acted with an intent to humiliate plaintiff, to inflict pain or injury, or to gratify his own sexual desires.  Accordingly, plaintiff has no viable Eighth Amendment claim against Sousek.

Plaintiff also seems to assert a claim against Sousek under the Health Insurance

Portability and Accountability Act ("HIPAA") based on Sousek's alleged discussion of plaintiff's medical conditions with some security officers who were outside the treatment room. However, plaintiff cannot bring such a claim because HIPAA does not create a private cause of action or an enforceable right for purposes of a private civil suit. Kobishop v. Marinette Cnty. Sheriff's Dep't, 2013 WL 3833990, at *2 (W.D. Wis. July 24, 2013); Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010); Seaton v. Mayberg, 610 F.3d 530, 533 (9th Cir. 2010); Department of Health and Human Services, Rules and Regulations, 65 Fed. Reg. 82601 (Dec. 28, 2000) ("Under HIPAA, individuals do not have a right to court action.").

Finally, because Sousek did not violate plaintiff's constitutional rights, plaintiff cannot proceed on a claim that Lt. Guivera and other unnamed correctional officers outside the treatment room violated his constitutional rights by failing to respond when he called for help. Fillmore v. Page, 358 F.3d 496, 506 (7th Cir. 2004) (no constitutionally impermissible failure to intervene when there is "no violation that compelled intervention.").

4. Offsite Medical Professionals: Dr. Nelson, Western Wisconsin Urology Eau Claire, Dr. Martin, BRMH Emeregency Room, Nurse Rebekka and numerous other individuals and entities named in dkt. #9

In addition to suing the institution's health services staff, plaintiff has named as defendants every medical professional who treated him at the three offsite hospitals where he received care between February 15 and March 5, 2019. As an initial matter, plaintiff has not alleged that any of these medical professionals was acting "under color of state law," which is a necessary element of a § 1983 claim. Rossi v. City of Chicago, 790 F.3d 729, 734

(7th Cir. 2015).  See also Rodriguez v. Plymouth Ambulance Service, 577 F.3d 816, 828 (7th Cir. 2009) ("In order to be liable *as the state* for the provision of medical services, the private provider must have a direct, not an attenuated, relationship with the prisoner-patient."). Even assuming plaintiff could meet that requirement, he has wholly failed to articulate any plausible Eighth Amendment claim against any of these defendants. Plaintiff simply narrates the course of his treatment and attaches his medical records, without saying what anyone supposedly did wrong.

So far as it appears, plaintiff is suing these defendants because he had post-surgery complications and blood in his stool two weeks later.  However, the mere fact that plaintiff had medical problems is not enough to permit an inference of negligence, much less an Eighth Amendment violation.  Certainly, nothing in plaintiff's medical records permits an inference that any of the treatment providers failed to exercise medical judgment or prescribed treatment they knew would be ineffective.  Accordingly, he will not be allowed to proceed on a deliberate indifference claim against any of the non-prison staff defendants.

### B.  Retaliation:  Peterson, Dervus, Ms. Jessi, and John Does

Next, plaintiff claims that he was terminated from his canteen job in retaliation for filing a complaint against Sousek and the members of the transportation team. Cpt., dkt. #1, at p.5.  To state a First Amendment retaliation claim, a plaintiff must allege:  (1) he was engaged in a constitutionally protected activity; (2) defendants took one or more retaliatory actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to suggest that plaintiff's protected activity was one of the

reasons defendants took action against plaintiff.  Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012); Bridges v. Gilbert, 557 F.3d 541, 556 (7th Cir. 2009).

Plaintiff's filing of inmate complaints was a protected activity, Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir. 2010), and being fired from a prison job could deter a person of "ordinary firmness" from engaging in protected First Amendment activity in the future. Campos v. Dittman, No. 17-CV-545-JDP, 2017 WL 11507424, at *3 (W.D. Wis. Oct. 31, 2017).  However, plaintiff fails to allege any plausible connection between the two actions. Specifically, he alleges no facts to suggest how defendant Peterson – the person who fired him – would have known plaintiff filed complaints against Sousek or the transportation team.  The mere fact that the spouse of one of the members of the transportation team (van Kirk) allegedly provided security in the canteen area is not enough.  What matters is what the decision-maker knew.  Here, nothing in plaintiff's detailed submissions supports an inference that Peterson knew about plaintiff's complaints, much less that those complaints were a reason she fired plaintiff.  Accordingly, he cannot proceed against Peterson on a retaliation claim.

Finally, because plaintiff has not alleged *any* facts with respect to the other defendants (Ms. Jessi, Dervus, and John Does) that he has named in connection with the retaliation claim, his claims against these defendants will be dismissed as well.

## C.  Remaining Defendants

Plaintiff has named a handful of other defendants, but he has failed to state a viable claim for relief against any of them.  For example, he names correctional officer Pleshnesneu,

but his only allegation as to this defendant is that he made an ambiguous offhand remark while transporting plaintiff from the health services unit to his cell.  Plaintiff names Speckheart, the officer who investigated his PREA complaint, and the prison warden, defendant Tegels, presumably because these defendants rejected his administrative complaints about the above-described incidents.  However, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); see also Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create [constitutionally-protected] interests ..., and so the alleged mishandling of [ ] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").  As for Department of Corrections Secretary Carr and Deputy Warden Buesgen, there is no plausible basis in plaintiff's detailed submissions to infer that either of these individuals had any personal involvement in any of the alleged constitutional deprivations.  Finally, to the extent plaintiff seeks leave to proceed against other defendants not specifically mentioned in this order, his request is denied for his failure to state any constitutional claim against them.


### D.  State Law Claims

Finally, I understand plaintiff to be asserting claims for medical negligence under state law against the medical professional defendants.  Having dismissed all of plaintiff's federal law claims, I decline to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3).  Plaintiff's state law claims will be dismissed without prejudice

20

so that he may pursue them in state court.

ORDER

IT IS ORDERED that

1.  Plaintiff's federal law claims are DISMISSED with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim and his state law claims are DISMISSED without prejudice.

2.  Plaintiff's motion for court assistance in recruiting counsel, dkt. #3, is DENIED as unnecessary.

3.  The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 1ST day of June, 2022.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge